# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID SHEPPARD<br><br>*Plaintiff,*<br><br>v.<br><br>THOMAS J. DART in his official and individual capacities; THE COOK COUNTY SHERIFF'S MERIT BOARD; KIM FOXX, in her official capacity as Cook County State's Attorney; and COOK COUNTY, a unit of local government as indemnitor; ZELDA WHITTLER (Ind. Cap.); GREGORY ERNST (Ind. Cap.); and BRADLEY CURRY (Ind. Cap.),<br><br>*Defendants.* | No. 19 C 296<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Sheppard, a former long-time employee of the Cook County Sheriff's Office, filed this eleven count, forty-four page complaint challenging his termination as a Police Investigator within the Sheriff's Office of Correctional Information and Investigations Division. Among the eleven counts is a 42 U.S.C. § 1983 claim that Sheppard's First Amendment rights were violated. Sheppard alleges that he was fired as a means of retaliation for his reporting of certain misconduct he uncovered during the course of his employment. All Defendants moved to dismiss Sheppard's claims on various grounds. However, the Court need only address

Defendants' Motion with respect to Count One. Because the Court ultimately finds that the First Amendment retaliation claim—the only claim this Court has original jurisdiction over—cannot state a claim, the remaining ten counts are remanded back to the Circuit Court of Cook County for further proceedings.

## BACKGROUND

David Sheppard began serving as a Cook County Sheriff's Police Officer in June of 2004. (Dkt. 13, ¶ 29). Specifically, Sheppard worked in the Correctional Information and Investigations Division (CIID) where he "investigate[d] information and potential crimes committed by detainees and crimes committed on the Cook County Department of Corrections ('CCDOC') properties..." (*Id.* at ¶¶ 38, 40). One of the potential crimes that Sheppard believes he discovered was a money laundering scheme orchestrated by CCDOC detainees. (*Id.* at ¶ 41). As part of his job, Sheppard conducted an investigation and proposed plans to eliminate the scheme to his supervisors, Defendants Curry and Ernst. (*Id.* at ¶ 42). Neither Curry nor Ernst did anything to address the money laundering following Sheppard's report. (*Id.* at ¶ 43).

During his employment, Sheppard also learned that an attorney battered a detainee and subsequently filed a false police report about the incident. (*Id.* at ¶ 44). Sheppard arrested the attorney, and then sought to file felony charges, but was ultimately asked to withdraw the request to press felony charges by Defendants Curry and Whittler. (*Id.* at ¶¶ 45-46). Sheppard declined to withdraw the charges, but was later ordered to do so by Curry. (*Id.* at ¶ 48). Sheppard was also involved in a coordinated investigation with the State's Attorney's Office regarding an internal

CCDOC incident. (*Id.* at ¶ 51). As part of the investigation, Sheppard requested video evidence. (*Id.* at ¶ 52). After receiving initial pushback from the Sheriff's Video Unit regarding the request, Sheppard sought the assistance of Defendants Ernst and Curry who only provided him with a redacted version of the video. (*Id.*). Sheppard believed that the redacted video restricted the evidence in the case and therefore was considered evidence tampering. (*Id.* at ¶ 53). The State's Attorney's Office ultimately subpoenaed the non-redacted video. (*Id.* at ¶ 54).

Separately, in 2016, Sheppard reported what he considered to be systemic violations at CCDOC. First, he believed that detainees were regularly not being read their *Miranda* rights. (*Id.* at ¶ 56). Second, Sheppard "discovered intake violations of new arrestees." (*Id.* at ¶ 59). Again he reported his concerns to Curry and Ernst who told him not to worry and did nothing to address his findings. (*Id.* at ¶¶ 58, 60).

In March of 2017, Sheppard filed a report with the Cook County Office of the Independent Inspector General (OIIG) regarding the above alleged violations. (*Id.* at ¶ 62). Sheppard then filed the same report with seven other state and federal agencies and officials, including: Cook County Sheriff's Office of Professional Review, Attorney General's Office of the State of Illinois, Cook County State's Attorney Kimberly Foxx, Cook County Board President Toni Preckwinkle, Cook County Board Commissioner Richard Boykin, Cook County Board Commissioner John P. Daley, and the United States' Attorney's Office. (*Id.* at ¶ 64).

Less than a month after submitting this report, Sheppard received notification that he had to attend a *Loudermill* hearing to determine if he would be suspended

without pay pending a termination hearing before the Cook County Sheriff's Merit Board. (*Id.* at ¶ 65). Sheppard came to learn that Ernst personally filed the complaint against him. (*Id.* at ¶ 66). Sheriff Dart later approved Sheppard's suspension without pay and the termination charges before the Merit Board. (*Id.* at ¶ 69). Ultimately, the Merit Board terminated Sheppard for violating the Sherriff's Department rules and regulations. (Dkt. 13-1, pg. 5). Specifically, Sheppard copied files, without permission, that contained "testing scores, evaluations, attribute questions, and operational questions for personnel who applied in the CIID Unit in 2013" in preparation of a union grievance hearing scheduled for October 2016. (*Id.* at pg. 4).

Sheppard filed this lawsuit in the Circuit Court of Cook County and Defendants removed the case to Federal court. Along with his First Amendment retaliation claim (Count One), Sheppard alleges violations of the Illinois Whistleblower Act (Count Two), Illinois common law retaliatory discharge (Count Three), violations of Illinois' Administrative Review Law (Counts Four – Six), Illinois Mandamus actions (Counts Seven – Nine), a violation of the Illinois Open Meetings Act (Count Ten), and a count for indemnification against Cook County (Count Eleven).

## **LEGAL STANDARD**

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678.).

## **DISCUSSION**

### **I. Sheppard's First Amendment Retaliation Claim Fails as a Matter of Law**

The sole basis for this Court's jurisdiction over the instant matter is Sheppard's § 1983 claim that Defendants Dart, Whittler, Curry, and Ernst violated Sheppard's First Amendment rights when they acted to suspend him without pay and referred him to the Merit Board for termination. Sheppard argues this was done in retaliation for his attempts to report violations of law occurring at the CCDOC.

Public employees, by way of entering government service, necessarily agree to curtail certain liberties otherwise enjoyed by private citizens. *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006) ("When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."). However, "a public employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment." *City of San Diego v. Roe,* 543 U.S. 77, 80 (2004). "In order to establish a prima facie case of unlawful First Amendment retaliation, a public employee must establish that: (1) she engaged in constitutionally

protected speech; (2) she suffered a deprivation likely to deter her from exercising her First Amendment rights; and (3) her speech was a motivating factor in her employer's adverse action." *Valentino v. Vill. of S. Chicago Heights,* 575 F.3d 664, 670 (7th Cir. 2009). "[T]he threshold inquiry is whether the employee was speaking as a citizen; only then [does the court] inquire into the content of the speech." *Spiegla v. Hull,* 481 F.3d 961, 965 (7th Cir. 2007). Though "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti,* 547 U.S. at 421.

Here, the Court's inquiry begins, and ends, with determining whether Sheppard was speaking as a public employee or as a citizen when he distributed his report documenting purported abuses to various agencies. There is no rigid test to apply to conduct this analysis, nor is the Court confined to the formal language of an employee's job description. *Houskins v. Sheahan,* 549 F.3d 480, 490 (7th Cir. 2008) (writing that a Court looks at "what duties the employee is expected to perform, and is not limited to the formal job description"). Rather, a reviewing court must "take a 'practical' view of whether an employee is speaking as an employee or as a citizen." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1092 (7th Cir. 2008). "[W]e must ask whether the public employee spoke 'because that is part of what [the public employee] was employed to do.'" *Chrzanowski v. Bianchi,* 725 F.3d 734, 740 (7th Cir. 2013) (quoting *Garcetti,* 547 U.S. at 421).

Sheppard's Amended Complaint contains a single sentence outlining his duties as a Sheriff's Officer, but that single sentence is enough to prevent his claim from going forward. Sheppard alleges that he "was assigned, *inter alia,* to investigate information and potential crimes committed by detainees and crimes committed on the Cook County Department of Corrections ("CCDOC") properties and related duties." (Dkt. 13, ¶ 40). Even with this barebones and self-serving job description, the questioned speech—distribution of a report to various agencies and agency heads—was speech made by Sheppard in conjunction with his job responsibilities.

Sheppard was responsible for investigating crimes committed on CCDOC property and crimes committed by CCDOC detainees. *Id.* That is precisely what his report contained. Sheppard purports to have uncovered a money laundering scheme *committed by detainees,* along with several other "systemic" violations occurring *at the CCDOC.* Both fit squarely within the reasonable universe of Sheppard's duties as a public employee. *See e.g., Rose v. Haney,* 2017 WL 1833188, at *5 (N.D. Ill. May 8, 2017) ("Similarly, an employee who reports misconduct affecting an area within his responsibility (even when not strictly required to report it), also speaks pursuant to his official duties."); *Spalding v. City of Chicago,* 186 F. Supp. 3d 884, 904-05 (N.D. Ill. 2016) (collecting cases and noting that it is a "settled principle that if a public employee reports official misconduct in the manner directed by official policy, to a supervisor, or to an external body with formal oversight responsibility, then the employee speaks pursuant to her official duties and her speech is unprotected by the First Amendment"). When speaking on an area directly within his realm of

responsibility, Sheppard is acting as a public employee even if the specific speech is not delineated in his official job description or explicitly contemplated by the same. *See McArdle v. Peoria Sch. Dist. No. 150,* 705 F.3d 751, 754 (7th Cir. 2013) ("This court has held that a public employee's commentary about misconduct affecting an area within her responsibility is considered speech as an employee even where investigating and reporting misconduct is not included in her job description or routine duties."); *Vose v. Kliment,* 506 F.3d 565, 572 (7th Cir. 2007) ("While Vose may have gone beyond his ordinary *daily* job duties in reporting the suspected misconduct outside his unit, it was not beyond his official duty as a sergeant…to ensure the security and propriety of the narcotics unit's operations.").

Sheppard no doubt alleges that he was speaking as a private citizen and not as a public employee. *See e.g.* (Dkt. 13, ¶¶ 103-104) ("Plaintiff was not required to report these issues to the OIIG, the State's Attorney's Office, or the external agencies and officials, and did so as a citizen on matters of public concern, not pursuant to his job duties. … Plaintiff was at no time acting pursuant to his job duties in reporting the foregoing listed matters to the County OIIG or the State's Attorney's Office, and the other agencies."). However, Sheppard "cannot escape the strictures of *Garcetti* by including in [his] complaint the conclusory legal statement that [he spoke] 'as a citizen … outside the duties of her employment.'" *Tamayo,* 526 F.3d at 1092. A plaintiff's use of labels and conclusions is not adequate to survive a motion to dismiss, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). The mere theoretical chance

that an employee spoke as a citizen is no longer sufficient to meet the notice pleading requirements. *Abcarian v. McDonald,* 617 F.3d 931, 937 (7th Cir. 2010). Sheppard has not met his obligation to plead specific facts suggesting his speech was made as a private citizen. To the contrary, he has pled himself out of court. A comparison of his job duties to the character of the speech reveals no daylight between the two suggesting the speech could be anything but speech made in line with his job responsibilities. *See Kubiak v. City of Chicago,* 810 F.3d 476, 482 (7th Cir. 2016) (holding speech "intimately connected" with an employee's job only serves to bolster the conclusion that an individual was speaking as an employee).

That Sheppard ultimately distributed his report detailing various violations to entities and individuals outside of the CCDOC does not change the calculus. There is no bright line rule that speech made outside the formal structure of an employee's hierarchy automatically renders the speech private. For example, in *Trigillo v. Snyder,* the plaintiff was the manager of procurement for the Illinois Department of Corrections. During the course of her employment, she discovered potential misconduct in the IDOC procurement process and reported this misconduct to the Illinois attorney general, Department of Central Management Services, and the FBI. *Trigillo v. Snyder,* 547 F.3d 826, 826-28 (7th Cir. 2008). Ultimately, the Court ruled that Trigillo, an individual responsible for overseeing procurement transactions, was not protected by the First Amendment when she reported *internal* misconduct to *external* agencies. *Trigillo,* 547 F.3d at 830. Sheppard is no different. He was

responsible for investigating unlawful activity at the CCDOC and his report concerned purported unlawful activity at the CCDOC.

Though his intentions may have been laudable, Sheppard's actions do not warrant First Amendment protection merely because of their praiseworthiness. *Vose,* 506 F.3d at 572 ("Vose's speech, albeit an honorable attempt to correct alleged wrongdoing, was not protected by the First Amendment."). Because Sheppard was speaking about information within the scope of his job duties, he was doing so as government employee and not as a private citizen. Therefore, the Court grants Defendants' Motion to Dismiss for failure to state a claim as to Count One. (Dkt. 41). The Court's dismissal of his First Amendment claim does not necessarily leave Sheppard without any recourse. "The Supreme Court has noted that protection of a government employee's exposure of misconduct involving his workplace is more properly provided by whistleblower protection laws and labor codes." *McArdle,* 705 F.3d at 754. Nonetheless, as explained below, the Court declines to pass judgment on his Illinois Whistleblower claim or any of the residual state law claims.

**II. Pendent Jurisdiction and the Remaining State Law Claims**

Pendent jurisdiction allows a court which has jurisdiction over one claim to exercise jurisdiction over other claims where jurisdiction may otherwise be independently lacking. *See Robinson Eng'g Co. Pension Plan & Tr. v. George,* 223 F.3d 445, 449-50 (7th Cir. 2000). District Courts maintain broad discretion to relinquish pendent jurisdiction over state law claims when the "anchor" federal claim drops out of the proceeding. *See Dietchweiler by Dietchweiler v. Lucas,* 827 F.3d 622,

631 (7th Cir. 2016). Sheppard's First Amendment retaliation claim—the sole basis for federal question jurisdiction before the Court—has been dismissed with prejudice. Accordingly, the Court declines to exercise pendent jurisdiction over the ten remaining state law claims. The matter is remanded to the Circuit Court of Cook County for further proceedings.

## **CONCLUSION**

For the reasons stated within, the Sheriff Defendants' Motion to Dismiss is granted and Count One is dismissed with prejudice. (Dkt. 41). The Court declines to exercise pendent jurisdiction over the remaining state law claims and the case is remanded back to state court. *See* 28 U.S.C. § 1367(c)(3). The remaining Motions to Dismiss the state law claims are dismissed as moot. (Dkts. 38, 43).

_____
Virginia M. Kendall
United States District Judge

Date: September 25, 2019